# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 15-CV-1196 (JFB)
_____

J. MONROE STEBBINS,

Appellant,

VERSUS

ARTIFICIAL HORIZON, LTD. AND TRUSTEE MARIANNE DEROSA,

Appellees.

_____

**MEMORANDUM AND ORDER**
March 17, 2016
_____

JOSEPH F. BIANCO, District Judge:

The instant case involves an appeal from the Memorandum Decision and Order in the voluntary bankruptcy proceeding of debtor J. Monroe Stebbins a/k/a Julius Monroe Stebbins, ("Appellant" or "Stebbins"), under Chapter 13 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), against Artificial Horizon, Ltd. ("AHL") and Marianne DeRosa, the Chapter 13 trustee in Stebbins' bankruptcy, ("Trustee," and together with AHL, "Appellees"). Specifically, Stebbins appeals from an order of the Bankruptcy Judge Louis A. Scarcella, dated February 24, 2015, which granted the Trustee's motion to dismiss. For the reasons set forth below, the Court finds that the Bankruptcy Court did not err in granting the Trustee's motion to dismiss and affirms the rulings of the Bankruptcy Court in all respects.

I. BACKGROUND

A. Facts

The following facts, which the parties agree are not in dispute, are taken from the record of the Bankruptcy Court in the underlying proceeding. Appellant is the sole shareholder of Throg's Neck Trading Group, Ltd. ("Throg's Neck Trading"), which owned at least four parcels of real property in Bridgehampton, New York, some of which were or are subject to a Mortgage Consolidation, Modification, Extension and Spreader Agreement dated March 30, 2007 (the "Mortgage"), held by AHL. Stebbins executed a guaranty dated March 30, 2007 (the "Guaranty") of certain obligations owed

1

to AHL by Throg's Neck Trading. Throg's Neck Trading defaulted on payment of its indebtedness to AHL, and as a result, AHL commenced a foreclosure action (the "Foreclosure Action") against Throg's Neck Trading and Stebbins in the Supreme Court of the State of New York (the "State Court"). AHL obtained a Judgment of Foreclosure and Sale on February 4, 2010, and amendments to that judgment on March 24, 2010 and April 25, 2012. A sale of two of the Bridgehampton properties secured by the Consolidated Mortgage occurred on June 22, 2012, and AHL was paid $2,750,000.

On March 12, 2013, a Notice of Pendency with respect to the two remaining properties was filed with the office of the Suffolk County Clerk, and a referee was appointed in the Foreclosure Action on January 6, 2014, to compute the amount due to AHL. The referee filed a report dated January 24, 2014 (the "2014 Referee's Report") calculating that the amount due to AHL for principal, interest, late fees, and ancillary charges totaled $1,248,746.63 as of January 24, 2014. The State Court entered another amended judgment of foreclosure and sale on April 22, 2014 (the "Judgment"). The Judgment ratified and confirmed the 2014 Referee's Report and ordered that AHL is entitled to the total judgment of $1,248,746.63, plus interest at the judgment rate of 9% from and after January 25, 2014, costs and disbursements in the amount of $2,080, and reasonable legal fees in the amount of $19,500. The Judgment also ordered that the remaining two properties be sold at public auction.

Stebbins' Chapter 13 petition was filed on July 23, 2014 (the "Petition Date"), before the public auction of the two remaining Bridgehampton properties could take place. The Foreclosure Action and the public auction of the Bridgehampton properties were stayed as a result of Stebbins' bankruptcy filing under 11 U.S.C. § 362(a). According to Stebbins' Schedule B (Personal Property) to the petition, the remaining Bridgehampton properties owned by Throg's Neck Trading consist of two separate five-acre plots with a scheduled value of $1,500,000 and $1,450,000, respectively. The Bridgehampton properties secure the obligation of Throg's Neck Trading to AHL. The stock in Throg's Neck Trading is Stebbins' only significant asset other than a medical malpractice claim against Stony Brook Dental and Stony Brook University Hospital in the amount of $100,000. Stebbins does not own any real property directly.

Along with his Chapter 13 petition, Stebbins filed his Schedule D (Creditors Holding Secured Claims) listing only a noncontingent, liquidated, undisputed secured debt in the amount of $1,248,747 owed to AHL. The amount listed did not include costs and disbursements, legal fees as set forth in the Judgment, or statutory post-judgment interest. The Judgment amount of $1,248,746.63, plus costs and disbursements, legal fees, and post-judgment interest remained due and owing as of the Petition Date.

On September 8, 2014, the Trustee filed a motion to dismiss the Chapter 13 case, arguing, among other things, that the amount of secured debt listed by Stebbins exceeds the $1,149,525 statutory limit for secured debts under 11 U.S.C. § 109(e) for an individual Chapter 13 debtor. On September 16, 2014, AHL filed an affirmation in support of the motion to dismiss.

On September 17, 2014, Stebbins amended his Schedule D to list the debt due AHL as contingent, but did not make any

other changes as to the liquidated nature or amount of the debt.

On September 18, 2014, AHL filed an objection to the confirmation of Stebbins' proposed Chapter 13 plan on the basis that the plan does not provide for the payment of the AHL claim in full.

On September 19, 2014, Stebbins filed an opposition to the Trustee's motion to dismiss asserting that, regardless of the amount of debt he owes to AHL, his obligation under the Guaranty is contingent pursuant to New York Real Property Actions and Proceedings Law § 1371 ("Section 1371") and should not be included in the debt calculation under 11 U.S.C. § 109(e). Stebbins contends that AHL elected its remedy under New York Real Property Actions and Proceedings Law § 1301 ("Section 1301") by commencing an action to foreclose its lien on the Bridgehampton properties instead of suing under the Guaranty, and thus, may not now enforce the Guaranty until the conditions precedent under Section 1371 (the sale of all the Bridgehampton properties and entry of a deficiency judgment against him) have occurred. Thus, according to Stebbins, the debt owed to AHL arising out of the Guaranty is contingent and unliquidated because the amount of the deficiency is unknown at this time.

A hearing was held on the motion to dismiss on October 23, 2014, at which time Bankruptcy Judge Scarcella directed supplemental filings be submitted on the issue of whether Stebbins' obligation under the Guaranty was contingent and unliquidated. Stebbins, AHL, and the Trustee all submitted supplemental briefings on the issue, and a further hearing was held on December 18, 2014. Bankruptcy Judge Scarcella heard oral arguments; none of the parties presented any witness testimony or offered any exhibits into evidence. At the conclusion of the hearing, Bankruptcy Judge Scarcella granted the Trustee's motion to dismiss, and on February 24, 2015, issued a Memorandum Decision and Order memorializing his ruling that the guaranty liability of Stebbins is an unsecured, noncontingent, liquidated debt, and that Stebbins is ineligible to be a Chapter 13 debtor under 11 U.S.C. § 109(e).

B. Procedural History

On March 6, 2015, Appellant filed a notice of appeal from the Bankruptcy Court's February 24, 2015 order. Appellant filed his brief on March 23, 2015. The Trustee and AHL filed separate responses on April 3, 2015, and Appellant filed a reply on April 22, 2015. The Court has fully considered all of the submissions of the parties.

II. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). Part VIII of the Federal Rules of Bankruptcy Procedure outlines the procedure governing such appeals. Fed. R. Bankr. P. 8001.

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may "remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. In general, the Court

reviews the Bankruptcy Court's legal conclusions *de novo*, mixed questions of fact and law *de novo*, and factual findings for clear error. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007); *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003).

III. DISCUSSION

Appellant challenges the Bankruptcy Court's February 24, 2015 order granting the Trustee's motion to dismiss Stebbins' Chapter 13 case. Appellant argues that the Bankruptcy Court erred in finding that "as a result of a personal guaranty, Stebbins owes a liquidated, noncontingent unsecured debt to AHL that exceeds the unsecured debt limit of $383,174 established by 11 U.S.C. § 109(e) for an individual to be eligible for Chapter 13 relief." (Bankruptcy Record at 168.) It is Appellant's position that the Bankruptcy Court did not directly address Section 1301, the "election of remedies" rule, and that Section 1301 should apply to make his debt contingent and unliquidated.[1] Appellant asserts that, because AHL commenced foreclosure proceedings naming Stebbins as a defendant and the foreclosure sale has not yet occurred, AHL's only method of assessment and recovery is contingent on various factors, including the sale of the mortgaged properties. Appellant argues that the claim therefore remains contingent and unliquidated, and his noncontingent, liquidated debt does not exceed the limits established by 11 U.S.C. § 109(e). For the reasons that follow, the Court, under *de novo* review, affirms the Bankruptcy Court's February 24, 2015 order dismissing Appellant's Chapter 13 case.

A. 11 U.S.C. § 109(e)

To be eligible for relief under Chapter 13 of the United States Bankruptcy Code, an individual debtor must, on the date of the filing of the petition, have "noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525." 11 U.S.C. § 109(e).[2] Only noncontingent and liquidated debts are included when calculating the total amount of debt for eligibility purposes.

Though a Section 109(e) analysis generally begins with a review of the debtor's schedules, a court may also consider materials outside of the debtor's schedules. *See In re Moore*, No. 10-11491, 2012 WL 1192776, at *5 (Bankr. N.D.N.Y. April 10, 2012) (finding debtor ineligible under Chapter 13 after a review of debtor's schedules, the proof of claim, and other readily ascertainable information); *Mazzeo v. United States* (*In Re Mazzeo*), 131 F.3d 295, 305 (2d Cir. 1997) (finding debt to be easily ascertained from statutory provisions and tax returns). Neither Appellant nor Appellees contend that the Bankruptcy Court erred in considering materials outside of Stebbins' schedules, and the Court

---

[1] Section 1301 provides that "1. [w]here final judgment for the plaintiff has been rendered in an action to recover any part of the mortgage debt, an action shall not be commenced or maintained to foreclose the mortgage, unless an execution against the property of the defendant has been issued upon the judgment to the sheriff of the county where he resides, if he resides within the state, or if he resides without the state, to the sheriff of the county where the judgment-roll is filed; and has been returned wholly or partly unsatisfied. 2. The complaint shall state whether any other action has been brought to recover any part of the mortgage debt, and, if so, whether any part has been collected. 3. While the action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, without leave of the court in which the former action was brought."

[2] These amounts are updated every three years. 11 U.S.C. § 104(a).

concludes that the Bankruptcy Court properly considered the proof of claim filed by AHL, the Judgment, and the language contained in the Guaranty that gave rise to the debt owed to AHL.

### B. Whether the Guaranty Obligation is Contingent

Appellant argues that the Court erred in finding that Stebbins' debt is noncontingent, and that, although the Bankruptcy Court "recognized" Stebbins' argument regarding the "election of remedies" rule, it did not directly address it. Appellant asserts that Section 1301(3) applies in this case and supports the conclusion that the debt Stebbins owes AHL is contingent. The Court disagrees and affirms the Bankruptcy Court's conclusion that the obligation is noncontingent.

A contingent claim is an "obligation[ ] that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created." *Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d 143, 146 (2d Cir. 2009); (quoting *Olin Corp. v. Riverwood Int'l Corp.* (*In re Manville Forest Prods. Corp.*), 209 F.3d 125, 128-29 (2d Cir. 2000)). A debt is contingent when "the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger . . . liability." *In re Mazzeo*, 131 F.3d. at 303 (quoting *Brockenbrough v. Commissioner*, 61 B.R. 685, 686 (W.D. Va. 1986)). If the triggering event occurs prepetition, the debt becomes noncontingent as of the petition date. *Id.* ("'A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event . . . [A] creditor's claim is not contingent when the 'triggering event' occurred prior to the filing of the [C]hapter 13 petition.'" *Id.* (quoting 2 L. King, *Collier on Bankruptcy* ¶ 109.06[2][b] (15th ed. rev. 1997)).

The Second Circuit has made clear that liability need not be reduced to a judgment in order to cause debt triggered prepetition to become noncontingent as of the petition date. Specifically, the Second Circuit has explained:

> Nor, by a future "event," do we refer to a judicial determination as to liability and relief, for a claim may be noncontingent even though it has not been reduced to judgment. Although the creditor's ability to collect the sum due him may depend upon adjudication, that does not make the debt itself contingent. In broad terms, the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises. In this connection liability does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim.

*Id.*, 131 F.3d at 303 (internal quotation marks and citations omitted).

Section 1301(3) states that, with respect to an action to foreclose a mortgage, "[w]hile the action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, without leave of the court in which the former action was brought." Under New York law, this "election of remedies" rule applies to the holder of a note and mortgage. *See Resolution Trust Corp. v. J.I. Sopher &*

5

*Co.*, 1997 WL 100879, at *2 n.2 (2d Cir. Mar. 6, 1997) (citing *Mfrs. Hanover Trust Co. v. 400 Garden City Assocs.*, 568 N.Y.S.2d 505, 507 (N.Y. Sup. Ct. Nassau Co. 1991)). The purpose of Section 1301 is "to avoid multiple actions to recover the same debt and to confine the proceedings to collect the mortgage debt to one court and one action." *Contemporary Mortg. Bankers, Inc. v. High Peaks Base Camp, Inc.*, 156 B.R. 890, 894-95 (N.D.N.Y. 1993).

Appellant seeks to apply this rule here, arguing that because AHL elected to foreclose the mortgage, the amount of the obligation owed to AHL was, and still is, contingent. However, by the terms of the Guaranty,[3] Stebbins' liability was conditioned on the default of Throg's Neck Trading, the principal obligor. When Throg's Neck Trading defaulted, AHL gained the contractual right to enforce the Guaranty against Stebbins immediately. As the Bankruptcy Court correctly concluded, Stebbins' obligation became noncontingent at the time of default, before the foreclosure action was even commenced, and thus, is not contingent on a judgment or remedy in the foreclosure action. *See In re Wilson*, 9 B.R. 723, 725 (Bankr. E.D.N.Y. 1981) ("As a guarantor of payment, liability attached to the debtor immediately upon default of the principal obligor.") Moreover, the purpose of 1301(3), to prevent multiple actions to recover on the same debt, has no force here.

---

[3] The Guaranty provides, in relevant part, that "the Undersigned hereby absolutely and unconditionally guarantees to Lender, the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows: . . . . B. If this x is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafterly referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): Any and all of the Borrower's indebtedness to the Lender. The Undersigned further acknowledges and agrees with Lender that: 1. No act or thing need occur to establish the liability of the Undersigned hereunder, . . . . 2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to the Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. . . . . 4. The liability of the Undersigned hereunder shall be limited to a principal amount of $<u>Unlimited</u> (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest hereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. . . . . . . 6. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things: . . . (vii) foreclosure or enforcement of any collateral security . . . 11. . . . Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty." (Guaranty, AHL's Affirmation in Support of Standing Trustee's Motion to Dismiss Bankruptcy Petition, Ex. C, Sept. 15, 2014.)

In filing a motion to dismiss Stebbins' Chapter 13 claim, the Trustee did not seek to commence another action to recover on the same debt.

### C. Whether the AHL Claim is Liquidated

Appellant also argues that the Bankruptcy Court erred in concluding that the debt owed by Stebbins to AHL is liquidated. Appellant's position is that the debt in question cannot be liquidated until AHL obtains a deficiency judgment in the foreclosure proceeding against Stebbins under Section 1371.[4]

"The terms liquidated and unliquidated generally refer to the value of a claim or interest, the size of the corresponding debt, and the 'ease with which that value can be ascertained.'" *In re Greenwich Sentry, L.P.*, 534 Fed. App'x. 77, 79 (2d Cir. 2013) (quoting *In re Mazzeo*, 131 F.3d at 304). If a claim's value is "easily ascertainable" it is "generally viewed as liquidated," whereas a value that depends on "a future exercise of discretion" is considered unliquidated. *Id.* "'[C]ourts have generally held that a debt is 'liquidated' . . . where the claim is determinable by reference to an agreement or by a simple computation.'" *In re Mazzeo* 131 F.3d. at 304 (quoting 2 L. King, *Collier on Bankruptcy* § 109.06[2][c] (15th ed. rev. 1997) (citing cases)).

The Court finds that the Bankruptcy Court did not err in concluding that the debt in question is liquidated. The claim is determinable by reference to the note, the Guaranty, the Foreclosure Judgment, and a computation of interest. The amount due (the full amount of the outstanding indebtedness) was readily ascertainable from the point in time that Throg's Neck Trading's default triggered Stebbins' liability. Though Stebbins may dispute the amount he will ultimately have to pay AHL following a deficiency judgment in the foreclosure action, this does not automatically render the debt either contingent or unliquidated. *Id.* As the Bankruptcy Court points out, this conclusion is further supported by Stebbins' own Amended Schedule D, which reflects the debt owed to AHL as liquidated in the amount of $1,238,746.63.

---

[4] Section 1371(1) and (2) provide the following: "1.[i]f a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment may award payment by him of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds, pursuant to the directions contained in such judgment, the amount thereof to be determined by the court as herein provided. 2. Simultaneously with the making of a motion for an order confirming the sale, provided such motion is made within ninety days after the date of the consummation of the sale by the delivery of the proper deed of conveyance to the purchaser, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or in such other manner as the court may direct. Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment. Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus the amount owing on all prior liens and encumbrances with interest, plus costs and disbursements of the action including the referee's fee and disbursements, less the market value as determined by the court or the sale price of the property whichever shall be the higher."

III. CONCLUSION

For the foregoing reasons, Appellant's appeal of the Bankruptcy Court's dismissal of Stebbins' Chapter 13 case is denied. The Court affirms the rulings of the Bankruptcy Court in all respects. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 17, 2016
      Central Islip, New York

\* \* \*

Appellant is represented by Richard F. Artura of Phillips, Weiner, Quinn & Artura, 165 S. Wellwood Avenue P.O. Box 405, Lindenhurst, NY 11757. Appellees are represented by Stephen P. Gelfand of the Law Office of Stephen P. Gelfand, Esq., 548 West Jericho Turnpike, Smithtown, NY 11787, and Marianne DeRosa, Standing Chapter 13 Trustee, 100 Jericho Quadrangle, Suite 208, Jericho, NY 11753.